
FILED
IN OPEN COURT

2 0 2020

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.

ONKUR LAL

Defendant.

No. 1:20-cr-237

Count 1: Conspiracy to Commit Health Care Fraud (18 U.S.C. § 371)

CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

General Allegations

At all times material to this Criminal Information:

1. The defendant, ONKUR LAL, has been a licensed pharmacist in the Commonwealth of Virginia since in and around July 2018.

2. From in and around 2013 to in and around 2015, LAL worked as a pharmacy technician at both MEDEX PHARMACY ("MEDEX") and MEDEX HEALTH PHARMACY ("MEDEX HEALTH"), which were both located in the Eastern District of Virginia.

3. From in and around 2015 and continuing through at least in and around July 2018, LAL worked as a pharmacy intern at ROYAL CARE PHARMACY ("ROYAL CARE"). Then, from in and around July 2018 to in and around April 2019, LAL worked as a pharmacist at ROYAL CARE.

4. Mohamed Abdalla ("Abdalla") was a pharmacist licensed in the Commonwealth of Virginia. Abdalla owned and operated ROYAL CARE, MEDEX, and MEDEX HEALTH.

5. Mohammed Tariq Amin ("Amin") was a licensed pharmacy technician in the Commonwealth of Virginia. From in and around January 2015 to in and around January 2016, Amin served as a pharmacy technician at MEDEX HEALTH. From in and around January 2016 and continuing through at least on or about November 7, 2018, Amin served as ROYAL CARE's general manager. As the general manager, Amin was responsible for overseeing, controlling, and managing the day-to-day operations of the pharmacy.

6. Medicare, Virginia Medicaid, Maryland Medicaid, and TRICARE are federal health care programs funded directly, in whole or in part, by the United States Government, or a state health care program, as defined by Title 42, United States Code, Section 1320a-7b(f). Medicare, Virginia Medicaid, Maryland Medicaid, and TRICARE are also federal health care programs as defined by Title 18, United States Code, Section 24(b).

7. "Compounding" a prescription is a practice in which a licensed pharmacist or licensed physician combine mixed or altered ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient where standard medications, approved by the United States Food and Drug Administration ("FDA") are unsuitable due to patient allergies, intolerance to method of administration, or other uncommon factors. Compounded medications are prescribed and mixed for specific patients with particular needs; they are not to be mixed and marketed in bulk quantities. Compounded drugs are not FDA-approved. That is, the FDA does not verify the safety, potency, effectiveness or manufacturing quality of compounded drugs.

8. In general, compounded drugs are far more expensive than drugs approved by the FDA for the treatment of the same physical condition and are commonly reimbursed by Federal health care programs and private insurance companies at a far higher rate than FDA-approved drugs.

## COUNT ONE

*(Conspiracy to Commit Health Care Fraud)*

9. The General Allegations are re-alleged and incorporated by reference.

10. From a date unknown, but from at least in and around January 2014 and continuing through at least in and around April 2019, in the Eastern District of Virginia and elsewhere, LAL knowingly and willfully did combine, conspire, confederate and agree with Mohamed Abdalla, Mohammed Tariq Amin, and others, both known and unknown, to knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), including, but not limited to Medicare, Virginia Medicaid, Maryland Medicaid, TRICARE, Anthem BlueCross BlueShield, CareFirst BlueCross BlueShield, Aetna, and United Healthcare to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items and services, all in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

11. It was the purpose of the conspiracy for ONKUR LAL ("LAL"), Mohamed Abdalla ("Abdalla"), Mohammed Tariq Amin ("Amin") and their co-conspirators to unlawfully enrich themselves.

### Ways, Manner, and Means

The ways, manners, and means by which LAL and members of the conspiracy sought to achieve the purpose of the conspiracy included, but were not limited to, the following:

3

12. It was part of the conspiracy for co-conspirators to generate false prescriptions using either their own names, the names of other pharmacy employees, or the names of friends and family, for medications which they had no basis to believe were medically necessary and/or which were not authorized by any licensed medical practitioner.

13. It was further part of the conspiracy that the co-conspirators billed health insurance companies for prescriptions that were never filled for existing patients.

14. It was further part of the conspiracy that the co-conspirators billed patients' health care benefits programs for numerous high cost medications that the co-conspirators knew the patients did not need, were not prescribed, and/or never received.

15. It was further part of the conspiracy that the co-conspirators submitted false invoices, under the names of other pharmacies, to circumvent audits conducted of ROYAL CARE.

16. It was further part of the conspiracy that LAL and Amin fraudulently posed as pharmacists by elevating their title and credentials within the pharmacy's prescription software system.

17. It was further part of the conspiracy that LAL and Amin used the elevated titles to verify prescriptions, which were then submitted to health care programs and pharmaceutical suppliers for payment.

18. It was further part of the conspiracy that the co-conspirators caused the submission of false, fraudulent, and misleading claims for coupons intended to provide payment benefits/assistance to patients who needed certain pharmaceutical products.

19. It was further part of the conspiracy that the co-conspirators created fictitious patients in the system in order to fraudulently obtain payment for ROYAL CARE pursuant to the coupon programs.

Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, LAL and his co-conspirators committed overt acts in the Eastern District of Virginia and elsewhere, including, but not limited to, the following:

20. On or about December 16, 2018, in the Eastern District of Virginia, LAL wrote a fraudulent prescription for himself for an opioid antidote. LAL wrote on the prescription that a known doctor prescribed the medication, which was not true. This prescription was then fraudulently submitted for reimbursement from a health care benefit program.

21. From in and around January 2014 and continuing through at least in and around March 2019, LAL, Abdalla, Amin, and others, generated false prescriptions using either their own names, the names of other pharmacy employees, or the names of friends and family, for medications that were not medically necessary and/or which were not authorized by a licensed medical practitioner.

22. The co-conspirators were paid approximately $245,069.76 for this scheme for prescriptions that were fraudulently billed.

23. From in and around January 2014 and continuing through at least in or around April 2019, in the Eastern District of Virginia and elsewhere, LAL and the co-conspirators billed heath care benefit programs for high-cost medications when the patients did not need the prescriptions, the medications were not prescribed, and/or the patients never received the medications.

24. The co-conspirators were paid approximately $4,876,688.96 for this scheme for prescriptions that were fraudulently billed.

25. From in and around November 2015 to in and around October 2017, LAL and Amin elevated their credentials from pharmacy technician to pharmacist, a license neither of them held at the time in the Commonwealth of Virginia.

26. From in and around November 2015 to in and around October 2017, LAL and Amin used their elevated pharmacist titles to verify prescriptions, which were then submitted to health care benefit programs and pharmaceutical suppliers for payment.

27. From in and around November 2015 to in and around October 2017, health care benefit programs paid approximately $10,196,878 to the co-conspirators, as a result of LAL and Amin fraudulently posing as pharmacists.

28. From in and around December 2015 to in or around November 2017, in the Eastern District of Virginia and elsewhere, LAL and the co-conspirators causing the submission of false, fraudulent, and misleading claims for coupons intended to provide payment benefits/assistance to patients who needed certain pharmaceutical products.

29. From in and around December 2015 to in or around November 2017, in the Eastern District of Virginia and elsewhere, LAL and the co-conspirators created fictitious patients in the RX30 system in order to fraudulently obtain payment for ROYAL CARE pursuant to the coupon programs.

(All in violation of Title 18, United States Code, Section 371)

## NOTICE OF FORFEITURE

Defendant ONKUR LAL is hereby notified, pursuant to Federal Rule of Criminal Procedure 32.2(a), that upon conviction of the single offense set forth in this Criminal Information, he shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the violation.

The assets subject to forfeiture include, but are not limited to, the following: a monetary judgment in the amount of not less than $31,469.03, representing the proceeds the defendant obtained from the scheme set forth in count one of this Criminal Information.

Pursuant to 21 U.S.C. § 853(p), ONKUR LAL shall forfeit substitute property, if, by any act or omission of ONKUR LAL, the property referenced above cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(All in accordance with Title 18, United States Code, Sections 982(a)(7) and Fed. R. Crim. P. 32.2.)

G. Zachary Terwilliger
United States Attorney

By: *(signature)*
Carina A. Cuellar
Monika Moore
Uzo Asonye
Assistant United States Attorneys