IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:20cr237 |
| | ) | |
| ONKUR LAL, | ) | Hon. Claude M. Hilton |
| | ) | |
| Defendant. | ) | Hearing Date: March 5, 2021 |

### United States' Sentencing Position

The United States of America, through undersigned counsel and in accord with 18 U.S.C. § 3553(a) and the U.S. Sentencing Commission Guidelines Manual ("Guidelines"), hereby provides its position with respect to sentencing for defendant Onkur Lal ("Lal"). The Pre-Sentence Investigation Report ("PSR") has calculated the Guidelines range at 60 months. As discussed in further detail in this memorandum, the Government intends to be bound by the Plea Agreement and the intentions of the parties in negotiating the Plea Agreement[1], and recommends that the appropriate guidelines range here is 57-71 months with respect to incarceration.[2] Based on that

---

[1] The Probation Office has calculated Lal's Offense Level at 29 and has used a loss amount of $14,565,138.90 in determining a +20 level increase under §2B1.1. The Government intends to be bound by the terms of the plea agreement, in which the Government has agreed to recommend a +18 increase based on a loss amount of $5,157,695.11. It is also the Government's position that the underlying intent of those negotiations was not to recommend an additional +2 increase based on loss to a federal health care program. As such, the Government recommends that Lal's Offense Level be calculated at 25.

[2] Included in the PSR's advisory Guidelines calculations is a three-level decrease for acceptance of responsibility. In this respect, the United States agrees with the PSR that the defendant qualifies, pursuant to U.S.S.G. § 3E1.1(a), for a two-level reduction. In addition, the defendant timely notified the United States of his intention to plead guilty, thus permitting the United States to avoid preparing for trial and to allocate its resources more efficiently. Accordingly, the United States hereby moves, pursuant to § 3E1.1(b), to decrease the defendant's offense level by one additional level.

advisory Guidelines range and the § 3553(a) factors, a sentence of incarceration of 57 months is sufficient, but not greater than necessary, to account for each of the § 3553(a) factors in this case.

In particular, a sentence of 57 months appropriately captures the seriousness of the defendant's decisions to engage in multiple schemes to defraud health care benefit programs over more than five years resulting in a loss that exceeds $5 million. Moreover, a sentence of 57 months is necessary to provide general deterrence of fraud schemes, like this one, which are often hard to detect and can cause considerable losses to health care benefit programs, as well as beneficiaries. At the same time, this recommendation takes into account that Lal did not significantly profit from his involvement in the conspiracy and was not one of the leaders of this massive scheme that spanned over half a decade and resulted in considerable loss. Accordingly, the United States requests that this Court impose a sentence of imprisonment of 57 months, a period of supervised release of three years, and full restitution and forfeiture as described in greater detail below.

**I.   Factual Background**[3]

From at least in or around January 2014 through at least in or around April 2019, Lal engaged in a scheme with Mohamed Abdalla ("Abdalla"), Mohammed Tariq Amin ("Amin"), and others to defraud health care benefit programs. Abdalla owed and/or operated multiple pharmacies located in the Eastern District of Virginia during the time of the conspiracy. Lal began working for Abdalla as a pharmacy technician and then became a pharmacy intern. In 2015, Lal purchased a 5% ownership interest one of Abdalla's businesses, Royal Care Pharmacy ("Royal Care"). While Lal sold a 0.5% piece of this ownership interest to Amin in November of 2016, Lal retained a 4.5% ownership interest for the rest of the conspiracy. In or around July 2018, after Lal became a

---

[3] The PSR and the Statement of Facts signed by the defendant (Doc. No. 8) adequately set forth the offense conduct in this case.

licensed pharmacist, Lal began working at Royal Care as a pharmacist and worked there in this capacity until in or around April of 2019.

During the course of the conspiracy, Lal and his co-conspirators would generate false prescriptions using their names, the names of other pharmacy employees, or the names of friends and family members. These prescriptions were not medically necessary and/or were not prescribed by a licensed medical practitioner. For instance, Lal knew about a prescription for an opioid antidote that was written in his own handwriting and that was approved by him in RX30, the pharmacy's prescription software system, that was not medically necessary. While the pharmacy benefitted significantly from the fraudulent prescriptions that were billed, one additional benefit of this scheme to the co-conspirators was that it would allow them to exhaust their health care program deductibles, even though they were not actually paying the required co-payments or out-of-pocket expenses. Health care benefit programs paid the pharmacy approximately $245,069.76 for these fraudulent prescriptions.

Furthermore, Lal and his co-conspirators would bill health care benefit programs for prescriptions for existing pharmacy customers when these prescriptions were never filled. The co-conspirators selected extremely expensive medications when engaging in this scheme to maximize payments received from the health care benefit programs. On occasion, the co-conspirators would even send these unnecessary drugs to patients and would receive complaints from these customers upon receipt of these medications. The co-conspirators were paid approximately $4,876,688.96 for this scheme. Because of how rampant and lucrative the fraud was, it is unsurprising that at times during the conspiracy, Royal Care was audited by pharmacy benefit managers.[4] When this

---

[4] PBMs are third party administrators of prescription drug plans for federal, state, and private health care benefit programs. Among other things, PBMs process and pay drug claims on behalf of the plans.

occurred, the co-conspirators would take significant actions to try to conceal their fraud including fabricating false invoices to mask drug shortages/discrepancies.

In addition, the co-conspirators billed a health benefit program for claims submitted on behalf of members of the health plan for a foreign embassy when these medications were never prescribed by a licensed physician. This health benefit program paid approximately $35,935.38 for prescriptions involved in this illegal conduct.

In total, these schemes resulted in a loss to federal, state, and private health care benefit programs in the amount of $5,157,695.11. After Lal was approached by the Government, he agreed to speak with law enforcement and admitted to his participation in the fraud scheme and admitted his culpability. On October 20, 2020, defendant pled guilty to one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 371.

## II.     Guidelines Calculation

As the Court is well aware, although the Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Thus, at sentencing a court "must first calculate the Guidelines range." *Nelson v. United States*, 555 U.S. 350, 351 (2009). Here, the Probation Office has calculated Lal's total offense level at 29. This includes a base offense level of 6, a 20-level enhancement based on a total loss of more than $9,500,000 but $25,000,000 or less, a 2-level enhancement based on a conviction of a health care offense involving more than a $1,000,000 loss to a federal health care program, a 2-level enhancement based on the use of sophisticated means, and a 2-level enhancement for abuse of trust. It also includes a 3-level reduction for the defendant's acceptance of responsibility and timely notification to the United States of his intention to plead guilty. The

guidelines range for this total offense level is 87-108 months; however, the statutory maximum for this offense is 5 years. Thus, the Probation Office has computed the guidelines range at 60 months.

In the Plea Agreement, the Government has agreed to recommend a loss amount in this case that is more than $3,500,000 but less than $9,500,000. In addition, in negotiating this deal, it was the intention of the parties that the Government would not recommend an additional +2 enhancement based on a loss to federal health care program of more than $1,000,000. The Government intends to be bound by the terms of this Plea Agreement and the intent of the parties during the plea negotiations. As such, the Government recommends a base offense level of 6, a 18-level enhancement based on a total loss of more than $3,500,000 but is $9,500,000 or less, a 2-level enhancement based on the use of sophisticated means, and a 2-level enhancement for abuse of trust. The Government's recommendation includes a 3-level reduction for the defendant's acceptance of responsibility and timely notification to the United States of his intention to plead guilty. As such, the Government recommends a total offense level of 25. The guidelines range for this total offense level is 57-71 months, and the Government believes an appropriate sentence in this case is 57 months.

**III.    Section 3553(a) Factors**

After calculating the Guidelines, a sentencing court must then consider that Guidelines range, as well as the sentencing factors set forth in § 3553(a), and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). With respect to § 3553(a)'s enumerated factors, of particular pertinence here are the "nature and circumstances of the offense," "the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense," the need "to promote respect for the law," the need for the sentence "to afford adequate

deterrence to criminal conduct" and the need to "provide restitution to any victims." § 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(7). As explained below, based on those factors, a sentence of 57 months is warranted, appropriate, and reasonable.

> A. *A sentence of 57 months is appropriate based on the nature, circumstances, and seriousness of the offense.*

Here, Lal's conduct involved billing health care benefit programs for prescriptions that were not medically necessary, not prescribed by a medical practitioner, and/or not provided to the beneficiary. Lal engaged in this conspiracy for an extensive period of time – for over five years -- and along with his co-conspirators, he defrauded federal, state, and private health care benefit programs of more than $5 million. Lal was a frequent and active participant in elevating his credentials in RX30 to approve these fraudulent prescriptions when he was not a pharmacist, and he continued to approve these fraudulent prescriptions when he became a pharmacist. In fact, during the investigation, the Government uncovered a prescription for an extremely expensive opioid antidote written in Lal's handwriting and approved by Lal in the RX30 system that Lal has admitted was not medically necessary.

Moreover, along with his co-conspirators, Lal tried to hide the fraudulent conduct from PBMs that were auditing the pharmacy through various tactics such as creating false invoices intended to fool these PBMs into believing the pharmacy was not engaging in systemic and rampant fraud. The co-conspirators used their specialized knowledge of how PBMs investigate fraud to try to circumvent these audits and prevent the investigators from learning of the co-conspirators' illicit activities. Accordingly, given the length, scope, and seriousness of the defendant's criminal conduct, a sentence of 57 months is warranted in this case.

> B. *A sentence of 57 months is appropriate in light of the defendant's personal history and characteristics.*

A sentence of 57 months is also appropriate in light of Lal's personal history and characteristics. Lal does not have any criminal history pertinent to the conduct here. In addition, when Lal first begin engaging in this scheme, he was a relatively young individual who was greatly influenced by Abdalla, who was a mentor to him. It is also important to note that while Lal did have a small ownership stake in Royal Care and did benefit from submitting false claims to his insurance company to attempt to exhaust his deductible, overall Lal financially benefitted very little from this scheme.

However, it is particularly concerning that Lal continued to engage in this fraudulent conduct after he became a licensed pharmacist in 2018. As a pharmacist, Lal held a position of public trust and Lal abused that trust by engaging in this scheme and allowing his decision-making and actions to be tainted by greed by knowingly billing health care benefit programs for prescriptions that were not medically necessary and/or were not prescribed by a medical practitioner or not provided to a beneficiary. A sentence of 57 months is thus necessary to account properly for his personal history and characteristics.

      C.    *A sentence of 57 months is appropriate to promote respect for the law and afford adequate general deterrence of similar schemes.*

The need for general deterrence also warrants a sentence of 57 months. General deterrence is important in any white-collar case, but is particularly important here because health care fraud crimes like Lal's are difficult to detect. Health insurance benefit programs rely on pharmacists to make truthful representations about services being provided and the reasons they are being provided. These programs do not have the resources to investigate and verify that providers are complying with all applicable laws and rules. The jobs of these health care benefit programs become even harder when individuals, like the co-conspirators here, engage in conduct to hide their conduct such as creating false documentation. Moreover, health care fraud does not just harm

7

the health care benefit programs – it harms the beneficiaries because higher health care costs increase the amounts that these individuals have to pay over time for needed medications and services. A term of imprisonment of 57 months is thus necessary to send a message to other potential fraudulent actors that crimes like this one that could result in significant financial harm will be met with an appropriate term of incarceration.

## IV.   Restitution

The United States also asks that this Court impose restitution to the victims in the amount of $5,157,695.11. The Court already entered a Consent Order of Forfeiture at the plea hearing in this case. At sentencing, the Government will ask the Court to enter the restitution order that will be provided to the Court and defense counsel prior to the hearing.

## V.   Conclusion

For the reasons stated, the United States requests that this Court impose a term of incarceration of 57 months, as well as a period of supervised release of three years.

        Respectfully submitted,

        Raj Parekh
        Acting United States Attorney


By:    _____/s/_____
        Monika Moore
        Counsel for the United States
        Assistant United States Attorneys
        U.S. Attorney's Office
        2100 Jamieson Ave
        Alexandria, VA
        Phone: 703-299-3700
        Fax: 703-299-3981
        Email: monika.moore@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to all counsel of record.

By: _____/s/_____
Monika Moore
Counsel for the United States
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Ave
Alexandria, VA
Phone: 703-299-3700
Fax: 703-299-3981
Email: monika.moore@usdoj.gov